```
UNITED STATES DISTRICT COURT                          USDC SDNY
SOUTHERN DISTRICT OF NEW YORK                         DOCUMENT
------------------------------------------------------------X  ELECTRONICALLY FILED
   MICHAEL COYLE,                             :       DOC #:
                              Plaintiff,      :       DATE FILED: 10/28/2019
                                              :
               -against-                      :       19 Civ. 5000 (LGS)
                                              :
                                              :       OPINION AND ORDER
   NEW YORK CITY DISTRICT COUNCIL OF          :
   CARPENTERS PENSION FUND,                   :
                              Defendant.      :
-------------------------------------------------------------X
```

LORNA G. SCHOFIELD, District Judge:

Pro se Plaintiff Michael Coyle brings this action against Defendant New York City District Council of Carpenters Pension Fund ("Fund" or "Defendant"). Plaintiff claims that Defendant denied him access to early retirement or disability benefits in violation of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B). Defendant brings this unopposed motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, Defendant's motion is granted.

I.    BACKGROUND

The following facts are drawn from the Complaint, documents referenced therein, the relevant pension plan ("the Plan") documents and administrative appeal documents, all of which may be considered on a motion to dismiss under Rule 12(b)(6), given that the Complaint "relies heavily on [their] terms and effect." *See Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016). The facts in the Complaint are assumed to be true for the purposes of this motion, *see Doe v. Columbia Univ.*, 831 F.3d 46, 48 (2d Cir. 2016), except if they are contradicted by documents properly considered on the motion. *See Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011); *accord Glaser v. Upright Citizens Brigade, LLC*, 377 F. Supp. 3d 387, 393 (S.D.N.Y. 2019).

### A. The Fund, the Plan and the Trustees

The Fund is a multiemployer pension plan as defined under Sections 3(2), 3(35) and 3(37) of ERISA, 29 U.S.C. §§ 1002(2), (35) and (37). The Fund pays pension and disability benefits to eligible participants who work in "covered employment" as defined in the Plan.

The Fund is governed by a Board of Trustees. The documents that govern the Fund and specify the Trustees' authority include: (1) the Trust Agreement, (2) the Plan, which is the New York City District Council of Carpenters Pension Plan (Amended and Restated Effective January 1, 2010), and amendments thereto and (3) the Summary Plan Description effective October 2011 ("SPD") and subsequent Summaries of Material Modifications ("SMMs"). The Trust Agreement, the SPD and the SMMs (through July 27, 2012) were in effect when Plaintiff ceased covered employment on July 27, 2012, and remain in effect today. Because an individual's benefits are determined based on the Plan in effect on the date the individual ceases covered employment, the 2010 Plan governs Plaintiff's ERISA claim.

As "the named fiduciaries of the Plan," the Plan authorizes the Trustees to delegate their power. Accordingly, Fund Employees (referred to as the "Fund Office") make initial determinations on benefits claims, and the Appeals Committee of the Board of Trustees decides appeals of Fund Office decisions. More generally, the Plan grants the Board of Trustees with the "sole authority" to "[m]ake such rules as may be necessary for administration of the Plan," "construe the Plan subject to its provisions" and "decide all questions arising in the interpretation of the Plan, all of which shall be conclusive, final, and binding on all parties," as long as the Trustees do not act "arbitrarily and capriciously." The Trust Agreement and SPD both confirm the Trustees' authority to interpret the Plan and the limited reviewability of the Trustees' decisions, as well as the "absolute discretion" of the Trustees to administer, apply, construe and interpret the Plan and determine benefit eligibility, among other things.

B.  **Benefits, Types of Pensions and Requirements**

An individual's eligibility for benefits is based, in part, on his number of "vesting credits" (the sum of past and current pension credit). Vesting credits are earned based on a Fund participant's hours of service in covered employment in a calendar year. For example, if an individual works less than 300 hours of service in a calendar year, he earns zero vesting credits. If an individual works 300-599 hours of service in a calendar year, he earns 1/4 vesting credit. As of July 27, 2012, Plaintiff had earned 13.75 vesting credits.

The Fund offers two types of pensions relevant here, regular pensions and disability pensions. The regular pension is payable at age fifty-five if an individual has at least fifteen vesting credits. But the regular pension is not payable until age sixty-five if an individual has at least five, but fewer than fifteen vesting credits. While the disability pension does not have an age requirement, it has five separate requirements for eligibility: (1) a participant must be totally and permanently disabled, as defined in the Plan;[1] (2) a participant must have at least five vesting credits when the total and permanent disability commences; (3) the total and permanent disability must have continued for a period of at least six consecutive months; (4) the total and permanent disability must have commenced while the participant was an "active participant" in the Plan; and (5) the participant must file an application for a disability pension within thirty-six months after the date the disability commenced. The fourth requirement -- the active participant requirement -- is most relevant here because Plaintiff does not satisfy it. An active participant is someone who has worked in excess of 870 hours in two

---

[1] The Plan contains two separate definitions under which a participant can be deemed eligible for a disability pension. A "Phase I" disability pension occurs when, for the first 24 months of such disability, a participant is totally unable as a result of bodily injury or disease to engage in or perform the duties of any occupation in covered employment or in any occupation requiring the same or similar duties as any occupation in covered employment. A "Phase II" disability occurs when, after the first 24 months of disability, a participant is prevented by injury or disease from engaging in any gainful employment. The determination of whether a participant is totally and permanently disabled is within "the sole and absolute discretion of the Trustees."

consecutive years, and who has *not* had a one-year break in service. A one-year break in service occurs when an individual works less than 300 hours of covered employment in a year. A one-year break in service can be avoided (for the purpose of remaining eligible for a disability pension) if the participant was receiving unemployment insurance, workers compensation benefits or weekly disability benefits during the period in which the break in service was incurred.

  **C. Plaintiff's Pension Application, Denial and Appeal**

Plaintiff was denied disability benefits because he did not meet the requirement that his disability must have commenced while he was an active participant in the Plan. In short, Plaintiff ceased being an active participant as of January 1, 2014, and his disability did not commence until 2015.

Plaintiff is currently fifty-nine years old. Between 1981 and 2012, Plaintiff worked in covered employment as a carpenter. He ceased covered employment on July 27, 2012. During the 2013 calendar year, Plaintiff incurred a one-year break in service because he did not work 300 hours of covered employment during that year. Beginning on January 1, 2014, and in each year since, Plaintiff has not been an active participant in the Plan because he did not work more than 870 hours in the prior two consecutive years and he had a one-year break in service each year beginning in 2013. Instead, Plaintiff became a "deferred vested participant" -- a former active participant who has a non-forfeitable right to his accrued benefits under the Plan, but whose benefits have not yet commenced.

On September 6, 2017, the Fund Office received Plaintiff's application for disability pension, signed and dated as of August 10, 2017. Plaintiff's application included numerous representations that Plaintiff's disability had commenced in 2015: (1) Plaintiff's statement that he applied for a Social Security Disability award in July 2015 and a notice from the Social Security Administration ("SSA") dated August 1, 2017, advising Plaintiff that it had found that he had become disabled on July 1, 2015; (2) an affidavit signed by Plaintiff's attending physician stating that Plaintiff had ceased working due

to disability on April 10, 2015; (3) Plaintiff's statement that he had been unable to work as a carpenter since July 1, 2015; (4) Plaintiff's statement that April 2015 was when the illness or bodily injury to which he attributed his present condition began; and (5) Plaintiff's statement that April 20, 2015, was the date he was compelled by that illness to cease working in his occupation.[2] Plaintiff also represented that he had not applied for or received weekly disability or unemployment benefits during his one-year break in service in 2013.

On February 27, 2018, the Fund Office advised Plaintiff that he did not qualify for disability pension because of his one-year break in service during the 2013 calendar year. The February 27 letter further stated that, whether based on the July 1, 2015, date that SSA determined him to be disabled or the April 10, 2015, date of disability provided by his physician, Plaintiff did not comply with Article 4.2(a)(4) of the Plan, which requires that the total and permanent disability commence while the participant was an active participant in the Plan.

Plaintiff appealed the Fund Office's decision to the Appeals Committee, seeking reconsideration largely because of "extreme desperation" and physical and economic struggles due to injuries. The Appeals Committee determined that the Plan's eligibility requirements were properly applied and upheld the Fund Office's denial of benefits. Plaintiff filed this action in Supreme Court, New York County on May 9, 2019, and the Fund removed the action to this Court on May 31, 2019.

## II.   STANDARD

On a motion to dismiss, a court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the non-moving party, *Montero v. City of Yonkers*,

---

[2] Plaintiff did not apply for a Phrase I disability pension when he ceased covered employment on July 27, 2012. Rather, Plaintiff's application for a disability pension in 2017 indicates that he was not compelled to give up his occupation as a carpenter until April 2015. Plaintiff confirmed to the Fund's counsel that, as indicated on his 2017 disability pension application, he continued to perform carpentry work through 2015 for one or more employers who were not required to contribute to the Fund.

*New York*, 890 F.3d 386, 391 (2d Cir. 2018), but gives "no effect to legal conclusions couched as factual allegations," *Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 35 (2d Cir. 2017). To withstand a motion to dismiss, a pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Courts must "liberally construe pleadings and briefs submitted by pro se litigants, reading such submissions to raise the strongest arguments they suggest." *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017). "The policy of liberally construing pro se submissions is driven by the understanding that implicit in the right to self-representation is an obligation . . . of the court to make reasonable allowances to protect pro se litigants from inadvertent forfeiture of important rights because of their lack of legal training." *Id.* at 156-57. "We afford a pro se litigant 'special solicitude' by interpreting a complaint filed pro se to raise the strongest claims that it suggests." *Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486, 489 (2d Cir. 2018).

### III. DISCUSSION

Defendant's motion to dismiss is granted because, under the terms of the Plan, Plaintiff is not eligible for a disability pension. Under Section 502(a)(1)(B) of ERISA, a "participant or beneficiary" may bring a civil action "to recover benefits due to him under the terms of his plan." 29 U.S.C. § 1132(a)(1)(B); *see In re DeRogatis*, 904 F.3d 174, 187 (2d Cir. 2018). Courts interpret ERISA plans "according to federal common law," review ERISA plans "as a whole, giving terms their plain meanings" and construe ambiguities in favor of plan beneficiaries. *In re DeRogatis*, 904 F.3d at 187. "When a plaintiff asserts a claim for benefits due, we review the plan administrator's decision de novo unless 'the benefit plan gives the administrator . . . discretionary authority to determine eligibility for benefits or to construe the terms of the plan,'

in which case an arbitrary and capricious standard applies." *Id*. (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). An administrator's decision will be overturned as "arbitrary and capricious" only when the decision is "without reason, unsupported by substantial evidence or erroneous as a matter of law." *Roganti v. Metro. Life Ins. Co.*, 786 F.3d 201, 211 (2d Cir. 2015). Because the Plan, the SPD and the Trust Agreement vest the Trustees with the discretion to administer and interpret the Plan's rules, the denial of Plaintiff's benefits claim is reviewed under the arbitrary and capricious standard. *See Stolarik v. New York Times Co.*, 323 F. Supp. 3d 523, 540-41 (S.D.N.Y. 2018).

With respect to the denial of disability benefits, the decision of the Fund Office and Appeals Committee was not arbitrary and capricious. Plaintiff was not an active participant in the Plan when his disability commenced, and he is therefore ineligible for a disability pension. As specified by the Plan, eligibility for a disability pension requires, among other things, that the total and permanent disability must have commenced while the participant was an active participant in the Plan. An active participant is someone who meets participation requirements and has *not* had a one-year break in service. Here, Plaintiff had a one-year break in service in 2013 because he did not work at least 300 hours of covered employment that year. As a result, as of December 31, 2013, Plaintiff ceased to be an active participant and ceased to be eligible for disability benefits. While a one-year break in service can be avoided if the participant was receiving unemployment insurance, workers compensation benefits or weekly disability benefits during the one-year break, there is no indication that Plaintiff received these services during the 2013 calendar year. The Fund Office confirmed that Plaintiff was not in receipt of such benefits after he ceased covered employment in July 2012, and Plaintiff stated on his disability pension application that he had not previously received weekly disability or unemployment benefits. Also, Plaintiff's submissions do not factually dispute the loss of his active participant status as of December 31, 2013.

While the Court is sympathetic to the fact that Plaintiff's back problems "go way back to the 2000s or longer," under the Plan, a Phase I disability must be "total and permanent," meaning that a participant must be *totally unable* to engage in or perform the duties of *any occupation* in covered employment. The submissions indicate that, despite his health problems, Plaintiff continued covered employment until July 27, 2012, and that his total and permanent disability commenced in 2015, as set forth in Plaintiff's own statements, statements from his physician and SSA determinations. Consequently, the Fund Office and Appeals Committee's determination that Plaintiff was ineligible for a disability pension because his total and permanent disability commenced *after* he was no longer an active participant in the Fund was not arbitrary and capricious. *See DeCesare v. Aetna Life Ins. Co.*, 95 F. Supp. 3d 458, 482 (S.D.N.Y. 2015) (concluding that defendant's decision to terminate Plaintiff's benefits was not arbitrary and capricious where defendant listed all the information that was considered to conclude that plaintiff's disability did not fall within the plan's definition of disability).

Finally, the Court recognizes Plaintiff's need -- as expressed in his submissions to the Appeals Committee and the Court -- to access his pension benefits and the complicated nature of the rules that govern the Plan. Unfortunately, he is not eligible for regular pension benefits until he is sixty-five. Under the Plan, a regular pension is payable at age sixty-five if an individual has at least five, but fewer than fifteen vesting credits. Plaintiff has earned 13.75 vesting credits, which he has a non-forfeitable right to redeem for a regular pension when he turns sixty-five.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is GRANTED. The Court certifies that any appeal from this Opinion and Order would not be taken in good faith, and therefore permission to proceed *in forma pauperis* status is denied. *See* 28 U.S.C. § 1915(a)(3); *Coppedge v. United States*, 369 U.S. 438, 445 (1962); *accord Matter of AMR Corp.*, 566 B.R.

657, 669 (S.D.N.Y. 2017).

The Clerk of Court is respectfully directed to close the motion at Docket No. 19 and close the case.

Dated: October 28, 2019
New York, New York

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**